IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Thomas E. WARMINGTON, Attorney at Law.

Supreme Court

*No. 97–0457–D. Filed October 1, 1997.*

(Also reported in 568 N.W.2d 641.)

 

¶ 1. PER CURIAM. We review the recommendation of the referee that the license of Thomas E. Warmington to practice law in Wisconsin be revoked as discipline for professional misconduct. That misconduct consisted of transferring client funds to his own use, failing to promptly deliver funds to a client entitled to them, failing to respond to a client's calls and messages regarding her settlement proceeds, failing to hold client funds in a trust account, making misrepresentations to a client concerning his receipt of funds belonging to that client, failing to keep complete records of trust account funds and other trust property, failing to return an advance payment of a fee that he had not earned and failing to return a client's file, failing to provide competent, diligent, and prompt representation to a client, and failing to respond to numerous letters and telephone calls from the Board of Attorneys Professional Responsibility (Board) investigating those matters.

¶ 2. We determine that the seriousness and extent of Attorney Warmington's numerous acts of professional misconduct warrant the revocation of his license to represent others in the legal system. Attorney Warmington's prior discipline and the misconduct established in this proceeding demonstrate that he is unable or unwilling to conform his professional conduct to the standards we apply to those we license to practice law in this state.

¶ 3. Attorney Warmington was admitted to practice law in Wisconsin in 1977 and practiced in Brookfield until he closed his practice in November, 1996. He has been disciplined for professional miscon-

duct twice previously: in October, 1991, he consented to a public reprimand imposed by the Board for his failure to communicate for 20 months with the clients who had retained him to pursue a medical malpractice action, failing to inform them he had not filed their legal action timely, with the result that the statute of limitations barred their claim, misrepresenting to an attorney-relative of the clients that he had filed a malpractice action, and failing to cooperate in the Board's investigation of the matter; in August of 1995, he consented to a public reprimand from the Board for failing to notify a client of his receipt of the client's funds he had collected on the client's behalf and failing to deliver the funds to the client for more than two years, failing to keep that client informed as to the status of the collection matters and respond to reasonable requests for information from the client, and failing to respond to inquiries from the Board and produce requested documentation in the matter.

¶ 4. The referee, Attorney Michael Ash, made the following findings of fact and conclusions of law, to which the parties had stipulated. On December 6, 1994, Attorney Warmington was retained to represent a woman on a claim for damages. The fee agreement provided that he was to receive one-half of the first $500 recovered and one-third of any additional funds. The client paid him $500 as a "minimum trust account balance." Attorney Warmington reached a settlement in the amount of $15,000 on the client's claim, which was to be paid by an initial payment of $10,100 and the remainder in $200 monthly installments. Attorney Warmington received two cashier's checks totaling $10,100 payable to himself and the client on May 1, 1996. He endorsed his name and the client's name on those checks, indicating that he was her attorney in

fact, assuming he had the authority to do so but in fact not having that authority. He also cashed two $200 installment checks he received between June and October, 1996.

¶ 5. Attorney Warmington told the client on August 8, 1996 he was working on a release form and that she should receive her money soon. In fact, he had received from opposing counsel a general release form May 7, 1996 and follow-up letters May 27 and June 20. The client signed the release August 30, 1996, at which time Attorney Warmington said he would return the form to opposing counsel immediately and that she should have her money the following week, once opposing counsel approved the release. He told her that he had been receiving installment payments on schedule pursuant to the settlement. Thereafter, Attorney Warmington did not return four telephone calls from the client or five other calls she made after learning from the debtor that his installment checks had not been cashed. The client filed a grievance with the Board and also referred the matter to the local police.

¶ 6. Attorney Warmington called the client in early November, 1996, and told her his trust account had been frozen due to an unrelated matter. Attorney Warmington's trust account records showed that after depositing the settlement funds of this client, he cashed numerous checks on his trust account payable to himself or to his law firm and within days had insufficient funds in that account to cover the amount owed to the client. He gradually disbursed those funds to himself such that by August 12, 1996, only $8.24 remained of the $5416.36 that should have been on deposit for that client alone. On November 12, 1996, Attorney Warmington gave the client a check for $5416.36, together with a settlement statement, and

turned over to her two uncashed installment checks from the debtor that had been made payable to him.

¶ 7. Attorney Warmington did not respond to the Board's letter requesting information concerning this client's grievance, and he did not return seven telephone calls from Board staff. He also did not appear for an investigative interview and produce his client's file, as directed by the Board. After being personally served with a notice of investigative interview, he ultimately contacted the Board claiming that he had not received its prior correspondence or messages. He appeared at that interview but refused to give his statement under oath for the asserted reason that he was suffering from depression and thus any statements he might make would not be reliable.

¶ 8. The referee concluded, as the parties had stipulated, that Attorney Warmington engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c), by transferring the client's funds to his own use and by endorsing her name on checks without authority. By writing checks to himself and having a trust account with insufficient funds to cover the client's portion of the settlement constituted a failure to hold in trust funds belonging to a client, in violation of SCR 20:1.15(a).[1] His failure to promptly deliver to the client

---

[1] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "Client's Account" or

funds to which she was entitled violated SCR 20:1.15(b),[2] and his failure to respond to the client's calls and messages regarding the settlement proceeds violated SCR 20:1.4(a).[3] Finally, his failure to respond to the Board's numerous letters and telephone calls constituted a failure to cooperate with the investigation, in violation of SCR 21.03(4)[4] and 22.07(2).[5]

"Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . .

[2] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[3] SCR 20:1.4 provides, in pertinent part:

**Communication**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

[4] SCR 21.03 provides, in pertinent part:

**General principles.**

. . .

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

[5] SCR 22.07 provides, in pertinent part:

**Investigation.**

. . .

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being

¶ 9. In a second matter, Attorney Warmington was retained in March, 1996 as successor counsel to represent a woman in a divorce. Pursuant to the order in that case, his client was to receive $18,000 from the refinancing of the couple's house and $15,000 from her spouse's pension plan. Attorney Warmington was responsible for drafting the necessary documents for the transfer of those pension funds. The client also was to receive half of a tax refund her husband had received.

¶ 10. When the house was refinanced, Attorney Warmington deposited into his trust account a check payable to the client and to his law firm in the amount of $17,990. The original check had been made payable to the client only, but Attorney Warmington asked the payor to make it payable jointly to the client and his firm. He then deposited the check into his trust account, having endorsed on it his own name and that of the client, indicating that he had her power of attorney. The parties stipulated that while he did not have a separate power of attorney for the client, the fee agreement constituted a power of attorney insofar as negotiating and depositing checks on the client's behalf.

¶ 11. Between the end of August, 1996 and the end of the following October, Attorney Warmington wrote numerous checks payable to his law firm from his client trust account. Six days after he deposited the

investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

client's check, the balance of that account was insufficient to cover the amount owed to her, as it was only $17,033.24. Attorney Warmington continued to write checks to himself, gradually reducing that balance to $11,750 by October 2. An audit of that trust account revealed that between February 28 and March 6, 1996, Attorney Warmington's trust account was constantly overdrawn by as much as $318. When the bank froze that account October 11, 1996, it had a balance of only $11,750.44, notwithstanding the earlier $17,990 deposit of this client's funds.

¶ 12. When the client met with Attorney Warmington September 6, 1996, he told her he should be receiving the client's check from the refinancing of the house any day. In fact, he had received the check a week earlier. On September 10, 1996, he told the client that the check had arrived September 6 but he was waiting for it to clear the bank. He said he would telephone the client that evening to tell her when she could receive the money but he did not make that call, and he did not return eight subsequent calls from the client. The client terminated Attorney Warmington's services October 2, 1996 and obtained other counsel. At that time, Attorney Warmington had not disbursed her money, nor had he taken the necessary steps to complete the required documentation for the pension funds and obtain her portion of the tax refund.

¶ 13. On November 12, 1996, Attorney Warmington told the client's new attorney that he was charging her additional attorney fees of $1312.50 and would give the client a check for $16,677.50. He told that attorney they should accept the money that day, as the funds might not be available in the future. Attorney Warmington then gave the client a cashier's check

in that amount, but the client claimed she was entitled to the $1312.50 that he had deducted as his fee.

¶ 14. During the Board's investigation of this client's grievance, Attorney Warmington failed to respond to its numerous letters and telephone messages. He was unable to produce most of the trust account records he is required by SCR 20:1.15(e)[6] to maintain with respect to client property held in trust. At the investigative interview, he told the Board that he keeps his trust account records in his head, did not know where the trust account records were, and had not opened bank statements for some time.

¶ 15. After learning that successor counsel had been retained by this client and without permission to

---

[6] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(e) Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

communicate directly with her, Attorney Warmington nonetheless faxed the client a letter regarding the return of her funds, sending a copy to successor counsel. Throughout the progress of this matter, Attorney Warmington's wife was not an attorney in his service corporation but was designated as such in the firm name and on letterhead stationery.

¶ 16. The referee concluded, as the parties stipulated, that Attorney Warmington engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c), by transferring to his own use funds belonging to his client, even though she ultimately received funds to which she was entitled, with the exception of the $1312.50 she claims was hers. Attorney Warmington violated SCR 20:1.15(b) by failing to promptly deliver to that client funds she was entitled to and failed to hold those funds in trust, thereby violating SCR 20:1.15(a). He also violated SCR 20:1.15(d)[7] by failing to keep the disputed $1312.50 on deposit in his trust account when his client claimed an interest in it. Attorney Warmington violated SCR 20:1.4(a) by failing to respond to the client's numerous telephone calls concerning her funds and misrepresented to her, in violation of SCR 20:8.4(c), that the check was in the mail when he already had received and deposited it.

---

[7] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(d) When, in the representation, a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall continue to be treated as trust property until the dispute is resolved.

¶ 17. In addition, Attorney Warmington violated SCR 20:1.15(e) by failing to keep complete records of trust account funds and other trust property. He violated SCR 20:4.2[8] by communicating directly with his former client, knowing she was represented by counsel. He violated SCR 20:7.5(a)[9] by including in his firm name and in letterhead stationery that his wife was an attorney in his service corporation. Finally, his failure to respond to the Board's numerous letters and telephone calls in its investigation of this client's grievance violated SCR 21.03(4) and 22.07(2).

¶ 18. In another matter, Attorney Warmington was retained in August, 1996 to pursue a breach of contract case on behalf of the client's mother against a nursing home where the mother resided. The client paid him a $7500 retainer, and the fee agreement set forth a minimum fee of that amount and an hourly rate of $125. Attorney Warmington deposited the money into his client trust account and withdrew those funds the same day.

¶ 19. After not receiving a response to her numerous telephone calls and faxes and learning in late September, 1996 that the receptionist at his office

---

[8] SCR 20:4. 2 provides:

**Communication with person represented by counsel**
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

[9] SCR 20:7.5 provides, in pertinent part:

**Firm names and letterheads**
(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.

had not seen him for weeks, the client sent Attorney Warmington a letter stating that if he was not able to handle the case, she wanted the $7500 returned. Attorney Warmington did not respond to that letter. The client then filed a grievance with the Board and contacted the local police. An officer was unable to locate Attorney Warmington but left a business card at his home. Attorney Warmington then telephoned the officer and said he would be calling the client the following day, but he did not. The client sent Attorney Warmington another letter demanding return of her money and her file. Attorney Warmington did not respond. He telephoned the client November 3, 1996 and said he was working on her case, but the client told him she was no longer interested in dealing with him. The following day the client sent another letter demanding the return of her money and asserting that she had terminated his services October 9, 1996. It was not until November 22, 1996 that Attorney Warmington returned the $7500 to the client, together with her file. Attorney Warmington did not respond to the Board's numerous written and telephone inquiries in its investigation of this client's grievance.

¶ 20. The referee concluded that Attorney Warmington failed to keep this client reasonably informed about the status of her legal matter and comply promptly with her reasonable requests for information concerning it, in violation of SCR 20:1.4(a). His failure to return timely the advance payment of his fee that had not been earned and return the client's file, despite numerous requests to do so, violated SCR 20:1.16(d).[10]

---

[10] SCR 20:1.16 provides, in pertinent part:

**Declining or terminating representation**

. . .

His failure to cooperate in the Board's investigation violated SCR 21.03(4) and 22.07(2).

¶ 21. Between July, 1995 and November, 1996, Attorney Warmington failed to keep another client reasonably informed of the status of his legal matter and promptly comply with reasonable requests for information concerning it, in violation of SCR 20:1.4(a), and did not respond to the Board's numerous letters and telephone calls investigating that client's grievance, in violation of SCR 21.03(4) and 22.07(2).

¶ 22. Another matter concerned Attorney Warmington's representation of a defendant in a paternity action, for which he was retained in July, 1990. His arguing a meritless statute of limitations defense at a hearing on a motion to dismiss the action and failing to supervise the preparation of an expert witness to testify constituted his failure to provide competent representation, in violation of SCR 20:1.1.[11] His failure to diligently pursue a motion to amend the conceptive period and supervise co-counsel in the collection of evidence required to support that motion violated SCR 20:1.3.[12] His failure to respond to the Board's numer-

---

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[11] SCR 20:1.1 provides:

**Competence**
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

[12] SCR 20:1.3 provides:

ous letters and telephone calls in its investigation of the client's grievance violated SCR 21.03(4) and 22.07(2).

¶ 23. As discipline for that professional misconduct, the referee recommended that Attorney Warmington's license be revoked. The referee considered that misconduct extremely serious, as it consisted of repeated dishonesty, conversion of client trust account funds, and, in the referee's words, "callous disregard for the concerns of clients." We agree. By that misconduct and his prior disciplinary history, Attorney Warmington has established a pattern of misconduct that renders him unfit to be licensed to practice law in this state. We note that in the event he seeks reinstatement of his license, Attorney Warmington will be required to establish that he has made restitution or settled all claims of persons harmed by his misconduct or provide a satisfactory explanation of his failure or inability to do so. SCR 22.28(4)(k).

¶ 24. IT IS ORDERED that the license of Thomas E. Warmington to practice law in Wisconsin is revoked, effective the date of this order.

¶ 25. IT IS FURTHER ORDERED that within 60 days of the date of this order Thomas E. Warmington pay to the Board of Attorneys Professional Responsibility the costs of this proceeding.

¶ 26. IT IS FURTHER ORDERED that Thomas E. Warmington comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been revoked.

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.